**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BOBBY LEE HARRISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 C 893** |
| | ) | |
| **WEXFORD HEALTH SOURCES INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Bobby Lee Harrison was incarcerated at Stateville Correctional Center from February 29 to September 27, 2016. He was then transferred to Menard Correctional Center, where he was housed at the time he filed this lawsuit. Harrison alleges that multiple prison officials acted with deliberate indifference toward his medical needs in violation of 42 U.S.C. § 1983. His first amended complaint included claims against Wexford Health Sources, Inc. and multiple prison physicians, counselors, and administrators. Most of the defendants have been dismissed from the suit. The remaining defendants, Randy Pfister, Jose Prado II, John Baldwin, Landria Dennis and Vernita Wright, have moved for summary judgment on all of Harrison's claims. For the reasons below, the Court grants the defendants' motion.[1]

---

[1] The Court thanks attorney Arthur Don of Greenberg Traurig, LLC for his diligent service as appointed counsel for Harrison.

## Background[2]

### A.    Stateville employees and policies

The defendants are all employees of the Illinois Department of Corrections

(IDOC), and some of them worked at Stateville Correctional Center.  While Harrison

was imprisoned at Stateville, John Baldwin was the acting director of IDOC, Randy

Pfister was Stateville's warden, and Landria Dennis and Jose Prado II were correctional

counselors at Stateville.  Vernita Wright previously served as an assistant warden at

Stateville, but she has not employed there since her retirement in 2008.

At Stateville, correctional counselors collect grievances from individuals in

custody.  Correctional counselors are not responsible for addressing medical

grievances.  Instead, the correctional counselor makes a copy of the medical grievance

and writes a standard response that includes the following message: "A copy of this

grievance has been forwarded to the HCU [health care unit] for review and response.

The originals have been forwarded to the grievance office.  You will receive a final

response from the grievance office once the HCU responds to same."  Defs.' Stmt. of

Mat. Facts, Ex. 6 at 16:12-18, Ex. 9 at 52:11-53:15.  The grievance officer and

employees within the health care unit are in charge of determining the appropriate

---

[2] The defendants argue that their statement of material facts should be deemed admitted because Harrison's response did not comply with the requirements of Local Rule 56.1(b)(2) and did not include a statement of additional material facts as mandated by Local Rule 56.1(b)(3).  The Seventh Circuit has held that a nonmovant's failure to adhere to the local rules may result in an admission of the defendant's material facts. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).  However, "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion."  *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (quotation omitted).  The Court opts not to penalize Harrison for noncompliance with Local Rule 56.1, and doing so would make no difference in the outcome in any event.

response to a medical grievance.  Grievance appeals are handled by the Administrative Review Board (ARB).

**B.  Harrison's medical conditions**

Prior to Harrison's transfer to Stateville, he was housed at the Northern Reception and Classification Center (NRC).  Upon his arrival at Stateville, Harrison informed prison staff of his various medical conditions, and his medical records were also available to Stateville personnel.

**1.  Gastric stomach cancer**

In 2008 Harrison was diagnosed with gastric stomach cancer.  In 2012, doctors removed half of Harrison's stomach.  While at NRC, Harrison received monthly B-12 injections, a daily multivitamin, and Ensure drinks.  On February 27, 2016, Harrison was ordered a diet of six small meals a day for thirty days.

After his transfer to Stateville, that institution did not maintain the treatments Harrison had received at NRC.  On April 11, 2016, Harrison filed a grievance requesting a B-12 injection.  Two days later Prado responded with the standard counselor response as discussed above.  A grievance officer reviewed Harrison's medical record and determined that his most recent B-12 injection order was only for one dose.  In a June 28, 2016 grievance, Harrison asked prison staff to provide him with "one multivitamin once a day, and B-12 shot once a month."  Pl.'s Am. Compl., Ex. E.  On July 7, 2016, Dennis replied with the standard counselor response.  On September 27, 2016, a grievance officer responded to Harrison stating that the medical staff had reviewed the grievance and that he appeared to be receiving the proper medical care.

On June 17, 2016, a prison doctor submitted a dietary order for Harrison to be

given two snack bags per day. Harrison filed grievances on August 2 and August 3, 2016, asserting that the doctor's recommended diet was not effective. Dennis replied to both grievances with the standard counselor response. On September 9, 2016, Harrison filed an additional grievance reporting that he was vomiting and asking to be sent to the hospital for an upper G.I. test. On September 15, 2016, a doctor submitted an order for Harrison to receive six meals a day. Harrison filed a grievance later that day declaring that dietary staff were not complying with the new order. Dennis replied to the grievance with the standard counselor response. A grievance officer responded that the dietary staff had Harrison's new dietary order on record. Ten days later Harrison filed another grievance in which he criticized the dietary staff's refusal to comply with his dietary order. ARB reviewed this grievance on March 20, 2017, after Harrison's transfer to Menard Correctional Center. ARB did not affirm or deny the grievance but rather responded with information about Stateville's snack bag policy and encouraged Harrison to contact a counselor if the issue persisted.

### 2. Chronic pinched nerves

Harrison suffers from chronic pinched nerves in both arms, elbows and hands. On June 10, 2015, Dr. Reena Paul ordered elbow pads for Harrison. In December 2015, a neurologist examined Harrison and reported that his condition was "improving significantly with elbow pads." Pl.'s Am. Compl., Ex. L at 1. This physician also submitted an "rx" so that Harrison could be "handcuffed in front" and prescribed Gabapentin for pain. *Id*.

Upon Harrison's arrival at Stateville, medical staff assured him that he would receive new elbow pads and a new cuffing permit after he saw a doctor. On April 11,

4

2016, Harrison filed a grievance requesting 600mg of Gabapentin.  Prado replied to Harrison's grievance with the standard counselor response.  On May 9, 2016, a grievance officer responded that the pain medication prescription was for only 30 days.  The grievance officer also added that "[a]ll proper policies and procedures have been followed at this time."  Pl.'s Am. Compl., Ex. D.  Harrison filed another grievance on June 26, 2016, requesting that his handcuffs be placed in front.  Dennis responded three days later that "[o]ffenders are cuffed in accordance with IDOC policy and procedure" and noted that Harrison "has no medical permit indicating he should be cuffed from the front."  Pl.'s Am. Compl., Ex. K at 1.  A grievance officer reviewed Dennis's response and concluded that she had correctly addressed the issue.

On June 28, 2016, Harrison filed another grievance asking prison staff to provide him with "600mg Gabapentin twice daily" to treat his pinched nerve pain.  Pl.'s Am. Compl., Ex. E at 1.  Dennis replied with the standard counselor response.  A grievance officer responded by noting that a prison doctor had recently examined Harrison and recommended that no further action be taken "as grievant appears to be receiving medical care at this time."  *Id*.  Harrison filed a grievance on August 3, 2016, describing "severe pain" in both arms and asking for Gabapentin.  *Id*., Ex. F at 2.  On September 16, 2016, Harrison filed an additional grievance requesting Gabapentin.  Dennis replied four days later with the standard counselor response.

The ARB addressed Harrison's June 26, 2016 grievance on February 16, 2017, stating that "offender has no medical permit indicating he needs to be handcuffed from the front."  Defs.' Stmt. of Mat. Facts, Ex. 5 at 114.  The ARB response contains Baldwin's signature.

### 3. Chronic throat infection and growth in mouth

Before being transferred to Stateville, Harrison was found to have a growth on the roof of his mouth.  In August 2016, while at Stateville, he began to experience multiple throat issues, including burning and swelling.  Harrison alerted the medical staff, and they scheduled a medical visit for September 2, 2016.  He reported his symptoms to a prison doctor, and the doctor prescribed "cold pills and some [T]ums." Pl.'s Am. Compl. ¶ 137.  His symptoms continued, and he had another medical visit on September 8.  During that visit a doctor confirmed that Harrison had a throat infection and directed the nurses to give him an antibiotic shot.  After a few days of relief Harrison's condition worsened, and he filed two grievances on September 12 describing his symptoms and requesting additional antibiotics.  Dennis responded to both grievances with the standard counselor response.  Harrison had another medical visit on September 15, after which a doctor ordered x-rays for the growth in Harrison's mouth.  Harrison asked to be admitted to the hospital, but the doctor denied that request and said he should return for another medical visit in three weeks.  The next day, Harrison filed a grievance complaining about the treatment of his throat up to that point and requesting to see a specialist to examine his lymph nodes.

### 4. Hepatitis C (HCV) infection with cirrhosis of the liver

Harrison was diagnosed with HCV in 2008 while housed in the Cook County Jail. NRC medical staff denied Harrison's requests for HCV treatment, stating that he did not meet the criteria for treatment.  After his transfer to Stateville, he informed a doctor of his HCV diagnosis during an April 27, 2016 visit.  The doctor responded that he did not have Harrison's medical records from the Cook County Jail and told Harrison he would

6

order the records.  Harrison explained his HCV diagnosis to multiple health

professionals at Stateville but was repeatedly told that he did not meet the criteria for

treatment.  Harrison filed multiple grievances complaining about the lack of treatment for

his HCV throughout his time at Stateville but says that these grievances were never

returned to him—in other words, they went unaddressed.  On May 11, 2017, the ARB

reviewed a grievance Harrison filed after leaving Stateville.  The ARB response stated

that "per HCU, offender does not meet current guidelines for Hepatitis C treatment."

Defs.' Stmt. of Mat. Facts, Ex. 5 at 117.

## Discussion

To prevail on their motion for summary judgment, the defendants must

demonstrate that "there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

dispute as to any material fact exists if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  Once the movant has identified grounds for the motion, the

nonmovant must "submit evidentiary materials that set forth specific facts showing that

there is a genuine issue for trial."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir.

2010) (quoting Fed. R. Civ. P. 56(e)).  Because the defendants have moved for

summary judgment, all facts and reasonable inferences are construed in the light most

favorable to Harrison.  *See King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th

Cir. 2020).

## A.     Eighth Amendment claims

Prison officials violate the Eighth Amendment's mandate against cruel and

7

unusual punishment when they display "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim includes both an objective and a subjective element. For the objective element, a plaintiff must show that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective element the plaintiff must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). In other words, "[t]he officials must know of and disregard an excessive risk to inmate health." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Greeno*, 414 F.3d at 653). To satisfy the subjective element, Harrison must demonstrate that each defendant "knew of [his] serious medical condition but intentionally or recklessly disregarded it." *Hayes*, 546 F.3d at 523.

The parties do not debate whether each of the four medical conditions that Harrison identified—gastric stomach cancer, chronic pinched nerves, chronic throat infection and growth and HCV—are objectively serious. The Court therefore will assume these conditions constituted objectively serious medical conditions and proceed to the question of deliberate indifference. The defendants correctly assert that as nonmedical personnel (a department director, a warden, and correctional counselors), they were entitled to defer to the expertise of medical professionals. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). That said, "[n]on-medical defendants cannot simply ignore an inmate's plight." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Prison officials may be found deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison

8

doctors or their assistants are mistreating (or not treating) a prisoner" and fail to take action. *Hayes*, 546 F.3d at 527 (citation omitted).

      **1.    Acting Director John Baldwin**

      Harrison contends that Baldwin was aware of his denied grievances and "could have intervened." Pl.'s Mem. in Opp. to Summ. J. at 5. The receipt of inmate complaints can be sufficient to support an inference that a prison administrator knew of a substantial risk of harm to the inmate. *See Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (ruling plaintiff's letters put prison administrators on notice of his condition). The plaintiff must, however, produce evidence that the administrator gained knowledge of the plaintiff's medical needs through those complaints. *Boyce v. Moore*, 314 F.3d 884, 889-90 (7th Cir. 2002); *Manney v. Monroe*, 151 F. Supp. 2d 976, 992 (N.D. Ill. 2001) ("The Eighth Amendment claimant must satisfy a knowledge element by showing that the prison official was subjectively aware of the risk."). Baldwin has no independent recollection of Harrison or his medical issues, Defs.' Stmt. of Mat. Facts, Ex. 5 at 41:20-42:19, but his signature appears on multiple ARB reviews of Harrison's grievances, including a September 16 grievance regarding prison staff not complying with his dietary order. Pl.'s Am. Compl., Ex. H at 7. Harrison also testified he received a response signed by "John Baldwin" that an alternative cuffing permit would be honored, Defs.' Stmt. of Mat. Facts, Ex. 8 at 107:8-110:1,but he stated that he does not have copies of any correspondence with Baldwin, *id.* at 119:13-120:2.

      If Baldwin personally responded to Harrison's concerns about being handcuffed from the back, that could give rise to a reasonable inference that he was aware of a risk to Harrison's health. But Harrison twice described the individual who signed off on the

permit as the "medical director" at Stateville. *Id.* Later in his deposition, while discussing Baldwin's claimed role in his medical treatment as Acting Director, Harrison only mentioned Baldwin's supervisory role over the prison staff and his participation in the denial of his grievances. *Id.* at 114:9-120:2.

The evidence is insufficient to permit a reasonable jury to find that Baldwin signed off on a handcuffing-related permit for Harrison while serving as Acting Director of IDOC or that he otherwise participated in this claimed denial of Harrison's constitutional rights. Baldwin further testified, and it is undisputed for present purposes, that although his signature appears on the responses to Harrison's grievances, he did not review or sign those grievances and instead delegated this responsibility to his staff. Defs.' Stmt. of Mat. Facts, Ex. 5 at 48:9-10; 49:1-5. Because there is no evidence that Baldwin actually reviewed Harrison's grievances, no reasonable jury could find that "through the manner and content of [Harrison's] communication, he gave the prison official sufficient notice to alert him" of his medical needs. *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (internal quotation marks omitted).

Finally, Harrison asserts that Baldwin is "the last person to oversee the grievance and sign off on the appeals," Pl.'s Mem. in Opp. to Summ. J. at 4, but this claim is not supported by the record. Baldwin testified that he is not involved in the grievance process and does not recall ever reviewing an offender grievance. Defs.' Stmt. of Mat. Facts, Ex. 5 at 42:21; *Id.* at 44:12-16. There is no contrary evidence.

In sum, Harrison has not presented evidence from which a reasonable jury can conclude that Baldwin was aware of his serious medical needs, let alone that he was deliberately indifferent to them. Baldwin is entitled to summary judgment.

10

### 2.   Correctional counselor Landria Dennis

Correctional counselor Dennis testified that, in addition to forwarding grievances to medical staff, her job included ensuring that inmates were receiving a proper diet in accordance with their medical records.  Defs.' Stmt. of Mat. Facts, Ex. 8 at 28:13-29:1. Harrison claims that Dennis's failure to ensure that he received an appropriate diet after she signed two August 2016 grievances in which he complained about his doctor's dietary order constitutes deliberate indifference.  As a correctional counselor, Dennis did not have the authority to order medical care or recommend alternative courses of treatment.  Defs.' Stmt. of Mat. Facts, Ex. 8 at 24:14-18.   Furthermore, in addressing Harrison's diet-related grievance, Dennis was entitled to rely on the judgment of the medical professional who submitted Harrison's June diet order.  No reasonable jury could find that Dennis had reason to believe that medical staff were mistreating or failing to treat Harrison.

For similar reasons, no reasonable trier of fact could find that Dennis was deliberately indifferent to Harrison's medical condition involving his chronic pinched nerves.  While at NRC, Harrison received an order to be handcuffed from the front, and upon his arrival at Stateville medical staff assured him that he would receive a new cuffing permit once he saw a doctor.  Pl.'s Am. Compl. ¶ 76.  There is no evidence in the record, however, that a new cuffing permit was ever issued.  Prisoners at Stateville are handcuffed in the front only where there is a medical directive in place requiring this. Defs.' Stmt. of Mat. Facts, Ex. 8 at 68:23-69:14.  In a June 26, 2016 grievance, Harrison contended that he was not supposed to be handcuffed from the back due to medical issues.  Pl.'s Am. Compl., Ex. K.  Dennis testified that she relied on the information in

Harrison's medical records in determining that there was no medical directive calling for him to be handcuffed in the front.  Defs.' Stmt. of Mat. Facts, Ex. 8 at 48:23-49:8.  There is no contrary evidence.  As a nonmedical professional, Dennis was entitled to rely on the judgment of the medical staff that decided not to issue a new cuffing permit for Harrison.

Harrison also contends that his Eighth Amendment rights were violated in connection with Stateville personnel's treatment of his chronic throat infection and growth.  In his amended complaint, Harrison alleges that he told a physician assistant about his throat symptoms during a medical visit on September 2, 2016, but that Dr. Obaisi "refused to talk to plaintiffs [sic] at that time."  Pl.'s Am. Compl. ¶ 69.  Over the next two weeks Harrison filed multiple grievances describing his throat issues, all of which were signed by Dennis.  In those grievances, however, Harrison reported that he *did* speak to Dr. Obaisi during the September 2, 2016 visit.  *See, e.g.*, Pl.'s Am. Compl., Ex. P at 1.  Furthermore, in one of the September 16, 2016 grievances Harrison stated that Dr. Obaisi saw him on both September 8, 2016 and September 15, 2016.  *Id.* at 2. Nonmedical prison officials (like Dennis) cannot be "deliberately indifferent simply because [they] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006).  Harrison has not presented evidence that would permit a reasonable jury to find that Dennis had reason to believe he was receiving inadequate care.  It may be that Harrison disagreed with the treatment plans provided by Dr. Obaisi or other health professionals.  But such disagreement, without more, is insufficient to establish deliberate indifference.  *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir.

12

1996).  Dennis is entitled to summary judgment.

### 3. Correctional counselor Jose Prado II

Harrison claims that correctional counselor Prado was deliberately indifferent to his serious medical needs stemming from his gastric stomach cancer and chronic pinched nerves.  Prado signed Harrison's April 11, 2016 grievance in which he complained about pain from his pinched nerve and requested B-12 injections; he included the standard counselor response; and he forwarded Harrison's grievance to the medical care unit.  Pl.'s Am. Compl., Ex. D.  The May 9, 2016 response from a grievance officer stated that Harrison did not have a valid prescription for the medications he requested and that medical staff were complying with all proper procedures.  *Id.*  Prado was entitled to rely on these assurances by the medical staff.  *See Greeno*, 414 F.3d at 655-56 (concluding that prison complaint examiner's decision not to take further action once he had verified prisoner's treatment with medical officials did not constitute deliberate indifference).  No reasonable jury could find that he was deliberately indifferent to Harrison's serious medical needs.

### 4. Warden Randy Pfister

Harrison contends that Pfister is liable for Harrison's allegedly deficient medical care through his supervisory role at the prison.  In his amended complaint, Harrison argues that Pfister "hired these unqualified officials, and failed to adequately train their staff, or created a policy of [sic] custom that allowed the wrong to occur."  Pl.'s Am. Comp. ¶ 62.  The doctrine of *respondeat superior* does not apply to §1983 actions, and thus a supervisor cannot be held liable for the conduct of lower-level employees unless he "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a

13

blind eye for fear of what [he] might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). In other words, to be liable, Pfister must have been "personally responsible for the deprivation of a constitutional right." *Chavez*, 251 F.3d at 651 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Harrison has not presented any evidence that Pfister was personally responsible for any aspect of his medical care at Stateville. Pfister's involvement with medical care at Stateville was extremely limited, Defs.' Stmt. of Mat. Facts ¶ 34, and Harrison never directly informed Pfister about his medical issues, *id.* at ¶ 37.

Pfister's only possible involvement in Harrison's medical care would have been through the grievance process. In response to the defendants' summary judgment motion, Harrison adjusts his allegations against Pfister, contending the warden "was responsible for reviewing grievances and took no action to properly investigate Mr. Harrison's repeated grievances." Pl.'s Mem. in Opp. to Summ. J. at 14. But Pfister was only responsible for directly handling grievances that were referred to him by the Administrative Review Board. Defs.' Stmt. of Mat. Facts ¶ 36. There is no evidence that he personally reviewed any of Harrison's grievances, as they were all signed by designees. *Id.* ¶ 37. Because Harrison has not demonstrated that Pfister was aware of his medical needs, no reasonable trier of fact could find that he was deliberately indifferent to those needs.

### 5. Vernita Wright

Harrison originally alleged that Wright was an assistant warden during his incarceration at Stateville. However, Wright has not been employed at Stateville since

14

her retirement in 2008. Defs.' Stmt. of Mat. Facts ¶ 40. Harrison agrees that Wright was added to this suit in error and should be dismissed from this lawsuit. Pl.'s Mem. in Opp. to Summ. J. at 15. The Court therefore grants summary judgment in Wright's favor.

**B.     Qualified immunity**

The defendants also argued that they were entitled to summary judgment on qualified immunity grounds. The Court need not reach the question of qualified immunity because, as explained above, the lack of evidence of a constitutional violation is a more direct basis for granting summary judgment.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [dkt. no. 203] and directs the Clerk to enter judgment as follows: Judgment is entered in favor of the defendants and against the plaintiff.

Date: October 19, 2023

_____
MATTHEW F. KENNELLY
United States District Judge